# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALYSSA ROGERS,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 4:17-0696** |
| **v.** | : | **(MANNION, D.J.)** |
| **EAST LYCOMING SCHOOL** | : | |
| **DISTRICT, KEVIN STEELE,** | | |
| **and MICHAEL PAWLIK,** | : | |
| **Defendants** | | |

## MEMORANDUM

Presently before the court is a motion to dismiss the plaintiff's complaint, (Doc. 1), pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by the defendants, East Lycoming School District ("ELSD"), Kevin Steele, ELSD Athletic Director, and Michael Pawlik, ELSD Superintendent. (Doc. 9). The plaintiff, Alyssa Rogers, brings a gender discrimination claim, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, and a 14th Amendment Equal Protection claim, pursuant to 42 U.S.C. §1983, alleging that defendants prevented her from applying for an open position as an assistant coach with the school district based on her gender and the district's nepotism policy that was unequally enforced against her due to her gender. For the reasons discussed herein, the defendants' motion to dismiss is **GRANTED IN ITS ENTIRETY**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff filed the instant action in which she alleges that the ELSD's Athletic Director Steele and Superintendent Pawlik precluded her from applying for the Assistant Varsity Girls Basketball Coach position, based on her gender and familial relationship to the district's Head Basketball Coach, her father Ed Rogers. In March 2016, Craig Weaver, Sr. resigned as the assistant coach. Plaintiff alleges that when Ed Rogers told Steele he wanted plaintiff to be hired for the open paid assistant coach position, Steele stated that plaintiff could not have the job based on ELSD's nepotism policy "of not hiring family members [of] paid staff" which applied to "both the varsity and junior high level coaching positions." Steele also told plaintiff that ELSD had a "policy against hiring family members as paid assistants as it was a conflict of interest and [she] would have no support in her pursuit of the assistant coaching position because she was the daughter of the head coach."

Plaintiff describes the hiring structure at ELSD for prospective assistant coaches as follows: first, coaching candidates submit applications and resumes to be reviewed by the head coach and Steele; second, interviews are conducted with the head coach and Steele; and third, Steele and Pawlik

---

[1]The facts alleged in plaintiff's complaint, (Doc. 1), must be accepted as true in considering the defendants' motion to dismiss. *See* Dieffenbach v. Dept. of Revenue, 490 F.App'x 433, 435 (3d Cir. 2012); Evancho v. Evans, 423 F.3d 347, 350 (3d Cir. 2005).

make the recommendation for hire to ELSD's School Board.

Plaintiff states that in light of the discussions with Steele and his lack of support, she *did not* apply for the open assistant coach position. Also, based on the conversations with Steele, Ed Rogers resigned from his head coaching position. Weaver then applied for the head coaching position.

While Weaver's application was pending, plaintiff's mother, Dr. Amy Rogers, who is a member of the ELSD School Board heard a rumor that Weaver wanted to have his two sons hired by ELSD as his paid assistant coaches. Amy Rogers then contacted Steele and asked him whether ELSD's policy against hiring family members as paid assistant coaches was still in effect. (*See* Doc. 3). Steele told Amy Rogers that "[a]s for bringing family members into paid positions, nothing has changed and that "[r]umors are rumors." (Id.).

Amy Rogers then discussed ELSD's nepotism policy with Pawlik and he "acknowledged that he first told a prior coach about the policy when the prior coach inquired about hiring his daughter as an assistant coach" and that "the policy was revisited by [ ] Steele during his conversation with Plaintiff." Plaintiff alleges that despite these assurances from Steele and Pawlik that ELSD's nepotism policy did exist which precluded the hiring of family members as paid assistants when familial ties to the head coach were present, Weaver's two sons were hired by ELSD as paid assistant girls basketball coaches while Weaver was the head coach.

Additionally, plaintiff alleges that before Ed Rogers became head coach, ELSD had hired a father and son as paid head and assistant coaches with the girls basketball team.

As such, plaintiff alleges that the real reason she was told by Steele and Pawlik that a nepotism policy existed in ELSD was "for the sole purpose of discouraging her to apply for a paid coaching position due to her gender."

Plaintiff filed a charge of sexual discrimination with the Equal Employment Opportunity Commission ("EEOC"). On January 26, 2017, she received a notice of the dismissal of the charge and of her right to sue from the EEOC. (Doc. 1 at 11). Having exhausted administrative remedies, plaintiff filed her complaint with this court on April 19, 2017. (Doc. 1). Plaintiff's complaint contains three counts, (I) Title VII Gender Discrimination against all defendants, (II) Violation of 42 U.S.C. §1983 (Equal Protection) against all defendants, and (III) Personal Liability against defendants Steele and Pawlik. Plaintiff alleges that Steele and Pawlik acted in their official and personal capacities. She also alleges that Steele and Pawlik acted recklessly and with a lack of regard for her rights which caused her to suffer monetary losses, loss of standing and reputation in the community, and humiliation. As relief, plaintiff seeks monetary damages, punitive damages, equitable relief, attorney's fees, and costs.

Defendants were then served with the complaint and on May 5, 2017, they filed waivers of service. (Doc. 5).

On June 23, 2017, defendants filed a motion to dismiss the complaint. (Doc. 9). After being granted leave to file their brief in support out of time, defendants filed it on July 19, 2017. (Doc. 15). Plaintiff filed her brief in opposition to the motion on August 2, 2017. (Doc. 18). Defendants then filed a reply brief on August 8, 2017. (Doc. 19).

This court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1343. Venue is appropriate in this court since the alleged constitutional violations occurred in this district and all parties are located here. *See* 28 U.S.C. §1391.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

The defendants' motion to dismiss is brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must

be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See* Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250,

1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See*, *e.g.*, Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). However, "[d]ismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

## B. Section 1983

The school district and the school officials are state actors for purpose of §1983. *See* Kline ex rel. Arndt v. Mansfield, 454 F.Supp.2d 258, 262 (E.D.Pa. 2006).

To state a claim under section 1983, a plaintiff must meet two threshold requirements: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, she was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986). If a defendant fails to act under color of state law when engaged in the alleged misconduct, a civil rights claim under section 1983 fails as a matter of jurisdiction, Polk Cnty. v. Dodson, 454 U.S. 312, 315

(1981), and there is no need to determine whether a federal right has been violated. Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). *See also* Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003)(citing *Rode*). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207. Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

With respect to actions against public officials acting in a supervisory capacity, the United States Supreme Court has held that claims must be differentiated based upon whether the defendant acted in his personal capacity or in his official capacity. Kentucky v. Graham, 473 U.S. 159, 155-65 (1985). Personal capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law." *Id.* (citing Scheuer v. Rhodes, 416 U.S. 232, 237-238 (1974)). Official capacity suits "generally represent only another way of pleading an action against an entity for which an officer is an agent." *Id.* (quoting Monell v. New York City Dep't Soc. Serv., 436 U.S. 658, 690 (1978)). The Supreme Court has also held that official capacity suits cannot succeed against officials acting in their official capacity on behalf of the state. Hafer v. Melo, 502 U.S. 21 (1991). "The law

is well established on this point, and courts sitting in the Third Circuit have dismissed defendants sued in their official capacity when the same claims are made against the municipality." Strickland v. Mahoning Twp., 647 F.Supp.2d 422 (M.D.Pa. 2009) (citing Whaumbush v. City of Phila., 747 F.Supp.2d 505, 510 n. 2 (E.D.Pa. 2010)).

## III.    DISCUSSION

### 1. Punitive Damages

The court will first address defendants contention that plaintiff's claim for punitive damages should be dismissed with prejudice. In her complaint, (Doc. 1 at 10), plaintiff alleges that she is entitled to punitive damages "to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future." Plaintiff does not specify the defendants against which she is seeking punitive damages.

With respect to punitive damages for a §1983 violation, this remedy is only available "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30 (1983). Regarding federal civil rights claims, "reckless indifference" refers to the defendant's knowledge of the illegality of his actions, not the egregiousness of his actions. Alexander v. Riga, 208 F.3d 419, 431 (3d Cir. 2000) (citing

9

[Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536 (1999)](#)).

It is well settled that the Supreme Court has held punitive damages may not be awarded against municipalities under §1983. *See* [City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981)](#). Punitive damages are not permissible against ELSD, nor are punitive damages permissible against Steele and Pawlik in their official capacity. *See* Yelland v. Abington Heights School District, 2017 WL 529837 (M.D.Pa. Feb. 9, 2017). As such, plaintiff's claim for punitive damages against ELSD and against Steele and Pawlik in their official capacity will be **DISMISSED WITH PREJUDICE**.

Plaintiff has also sued defendants Steele and Pawlik in their individual capacity. Defendants argue that plaintiff has failed to properly state a claim for punitive damages against Steele and Pawlik in their individual capacity. Plaintiff argues that "[defendants' knowingly callous and willful representations to Plaintiff in order to derail her pursuit of paid employment with her head coach father does rise to the level of 'evil motive [and] reckless' indifference." (Doc. [18](#) at 6).

As discussed below, the court finds that plaintiff has not sufficiently alleged that Steele and Pawlik violated her rights with respect to her Title VII gender discrimination claim in Count I and her equal protection claim under §1983 in Count II. As such, the court finds that plaintiff has not properly alleged "reckless indifference" regarding the knowledge of Steele and Pawlik of the illegality of their actions to seek punitive damages *See* [Alexander v.](#)

Riga, 208 F.3d at 430-31. Thus, plaintiff's claim for punitive damages against defendants Steele and Pawlik in their individual capacity will be **DISMISSED WITH PREJUDICE**.

### 2. §1983 Claim against Steele and Pawlik in their official capacity

To the extent plaintiff sues Steele and Pawlik in their official capacity, these defendants are part of ELSD itself. *See* Kentucky v. Graham, 473 U.S. 159, 165-166 (1985) (Section 1983 suits against individuals in their official capacity "represent only another way of pleading an action against an entity of which an officer is an agent.") (citation omitted). As such, plaintiff's claims against Steele and Pawlik in their official capacity merge with her claims against ELSD, and are redundant of the claims plaintiff asserts against ELSD. *See* Swedron v. Borough, 2008 WL 5051399, *4 (W.D. Pa. Nov. 21, 2008) (Court held that official capacity claims under §1983 against defendant police officers should be dismissed since they were redundant of the claims against defendant Borough) (citing Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988)); Brice v. City of York, 528 F.Supp.2d 504, 516 n. 19 (M.D. Pa. 2007) ("claims against state officials in their official capacities merge as a matter of law with the municipality that employs them."); Burton v. City of Phila., 121 F.Supp.2d 810 (E.D. Pa. 2000); Donovan v. Pittston Area School Dist., 2015 WL 3771420, *5 (M.D.Pa. June 17, 2015) (Court dismissed with prejudice plaintiff's claims against board members of school district in their official

capacity as redundant of claims against school district); Hill v. Bor. of Kutztown, 455 F.3d 225, 233 n. 9 (3d Cir. 2006); Yelland, 2017 WL 529837.

As such, plaintiff's claim under §1983 against Steele and Pawlik in their official capacity will be **DISMISSED WITH PREJUDICE**. Defendants Steele and Pawlik however can be sued under §1983 in their individual capacity in addition to defendant ELSD, as discussed below. Donovan v. Pottstown Area School Dist., 2015 WL 3771420, *16; Kohn v. School Dist. of City of Harrisburg, 817 F.Supp.2d 487, 510 (M.D.Pa. 2011); Damiano v. Scranton School District, 135 F.Supp.3d 255, 268-69 (M.D.Pa. 2015).

### 3. Gender Discrimination Claim Under Title VII

Defendants move to dismiss plaintiff's gender discrimination claim under Title VII, Count I. Defendants contend that plaintiff has failed to state a Title VII claim since they did not have the authority to make the ultimate decision as to who would be hired for the coach position. Defendants argue that under the Pennsylvania Public School Code, 24 P.S. §5-511, only the School Board has the power to control school athletics, develop policies, and hire and fire coaches. Section 5-511(a) of the School Code provides that:

> (a) The board of school directors in every school district shall prescribe, adopt, and enforce such reasonable rules and regulations as it may deem proper, regarding (1) the management, supervision, control, or prohibition of exercises, athletics, or games of any kind, … and other activities related to the school program, … and (2) the organization, management,

supervision, control, financing, or prohibition of organizations, clubs, societies and groups of the members of any class or school, and may provide for the suspension, dismissal, or other reasonable penalty in the case of any appointee, professional or other employee, or pupil who violates any of such rules or regulations.

Defendants also state that plaintiff admits she never applied for the position of assistant coach. Rather, she claims that Pawlik and Steele hindered her from applying.

Thus, defendants state that "Pawlik and Steele are not School Board members and therefore do not control school athletics, develop policies, and hire and/or fire coaches." (Doc. 15 at 5). No doubt that under Section 5-511(a) of the School Code the Board has exclusive authority "to prescribe, adopt, and enforce [ ] reasonable rules and regulations" regarding athletics. Based on this section, defendants argue that since plaintiff failed to allege that she applied for the coach position and was rejected and, since they lacked the final hiring authority of the position which pertained to athletics, they did not subject her to an adverse employment action and she cannot establish a prima facie case under Title VII.

Plaintiff states that ELSD, a public school district, prescribed or adopted rules and/or regulations that vested its agents, namely Pawlik and Steele, "with the authority to review and/or 'weed out' potential coaching applicants before the applicants were ever brought to the attention of the Board." (Doc. 18 at 4). Plaintiff alleges that both Pawlik and Steele were high-level

managers and decision-makers regarding the terms and conditions of employment for current and prospective employees, including hiring, firing, and disciplining. As such, plaintiff states that she has pled that the hiring structure established by ELSD for prospective assistant coaches began with Steele and Pawlik as opposed to the School Board, even if the Pennsylvania Public School Code P.S. §5-511 provides that the power to hire coaches is ultimately vested with the Board. Additionally, plaintiff alleges that any prospective coaching candidate had to initially check with the various agents appointed by ELSD "to manage, supervise and control athletics and other activities related to the school program." Plaintiff avers that she was discouraged from applying for the assistant coaching position at the direction of agents for ELSD, including Pawlik and Steele, and that was why she did not apply. She also avers that Pawlik and Steele repeatedly advised her that she would receive no support during the application process in light of ELSD's nepotism policy. Plaintiff alleges that based on the hiring decisions that were ultimately made by ELSD and endorsed by Pawlik and Steele, the nepotism policy was simply a guise to hide the true motivation, namely, gender discrimination, to discourage her application. In fact, plaintiff alleges in her complaint that after her father resigned as head coach, Weaver was hired to the head coach position and then Weaver's two sons were hired as his assistants despite the fact that ELSD's nepotism policy was still in effect.

In Howard v. Blalock Elec. Service, Inc., 742 F.Supp.2d 681, 689-90

14

(W.D.Pa. 2010), the court explained:

> Title VII's anti-discrimination provision provides that it is an "unlawful employment practice" for an employer "to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin ...." 42 U.S.C. §§2000e–2(a)(1). In Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 63–69, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the United States Supreme Court recognized that an employer discriminates against an employee because of his or her sex when it engages in sex-based harassment that is sufficiently "severe or pervasive" to alter the "terms, conditions, or privileges" of his or her employment.

Section 2000e-2(m) of Title VII (42 U.S.C.) provides, in pertinent part, that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." Title VII "prohibits employers from discriminating against individuals on the basis of their race, color, religion, sex, or national origin." Burton v. Teleflex, Inc., 707 F.3d 417, 426 n. 7 (3d Cir. 2013) (citing 42 U.S.C. §20002-2(a)(2)).

In Jones v. SEPTA, 796 F.3d 323, 327 (3d Cir. 2015), the Third Circuit stated:

> To state a prima facie case of gender discrimination [under Title VII], [plaintiff] [is] required to show that (1) she is a member of a protected class; (2) she was qualified for her position; (3) [she suffered] an adverse employment action; and (4) the circumstances of the [adverse employment action] give rise to an inference of discrimination.

*See also Page v. Trustees of Univ. of Pennsylvania*, 222 Fed. Appx. 144, 145 (3d Cir. 2007); *Jones v. Sch. Dist. of Philadelphia,* 198 F.3d 403, 410 (3d Cir.1999).

The Court in *Burlington v. News Corp*., 759 F.Supp. 2d at 592-593 (E.D.Pa. 2010), stated:

> Although showing that similarly situated coworkers were treated more favorably than the plaintiff is one method of satisfying the final element of a prima facie case of discrimination, it is not the only one. The Third Circuit has explained that although some circuits have required plaintiffs to make such a showing in discrimination cases, "that is not the current law in this or the majority of the circuits." *Sarullo,* 352 F.3d at 798 n. 7 (citations omitted). Indeed, the Third Circuit has counseled in *Sarullo* and elsewhere that the prima facie case is intended to be a flexible standard. *See id.* at 797–98 ("[T]he prima facie test remains flexible and must be tailored to fit the specific context in which it is applied." (citing *Geraci v. Moody–Tottrup, Int'l, Inc.,* 82 F.3d 578, 581 (3d Cir. 1996))); *see also Wishkin v. Potter,* 476 F.3d 180, 185 (3d Cir. 2007) (the prima facie test must be "tailored to fit the specific context in which it is applied" (quoting *Sarullo,* 352 F.3d at 797–98) (internal quotation marks omitted)); *Weldon v. Kraft, Inc.,* 896 F.2d 793, 798 (3d Cir. 1990) ("The framework set forth in *McDonnell Douglas,* which begins with proof of a prima facie case, was 'never intended to be rigid, mechanized, or ritualistic.' " (quoting *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978))). The Third Circuit has stated that to establish a prima facie case, it is sufficient for a plaintiff to adduce evidence that "establishes a causal nexus between the harm suffered and the plaintiff's membership in a protected class, from which a juror could infer, in light of common experience, that the defendant acted with discriminatory intent." *Anderson v. Wachovia Mortg. Corp.,* 621 F.3d 261, 275 (3d Cir. 2010) (discussing prima facie case in §1981 context); *Sarullo,* 352 F.3d at 798 (plaintiff "must establish some causal nexus between his membership in a protected class"

and the adverse employment decision to establish a prima facie case of discrimination in Title VII case).

Also, "the burden to establish a prima facie case is not an onerous one." *Young v. St. James Management, LLC*, 749 F.Supp. 2d 281, 288 (E.D. Pa. 2010). The elements are dependent on the facts of the specific case. *Id*. (citation omitted). The plaintiff's burden of proof is a preponderance of the evidence standard. Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061 (3d Cir. 1996).

In Count I, plaintiff alleges that "Defendants[] Steele and Pawlik engaged in the deceptive tactic of citing a nepotism policy purportedly embraced by [ELSD] to discourage and ultimately preclude [her] from applying for the paid position of assistant girls basketball coach." (Doc. 1 at 7). Plaintiff avers that "but for her gender, she would have been hired to serve in the position of a paid assistant girls basketball coach at [ELSD]." (Id. at 8). She also alleges that males who were related to the subsequent head coach, Weaver, and who applied for assistant coach positions, were hired by ELSD despite the nepotism policy. Further, plaintiff has alleged that before the tenure of her father, Ed Rogers, as head girls basketball coach, ELSD employed fathers and sons in the various capacities as head and assistant girls basketball coaches. However, plaintiff admits in her complaint, (Doc. 1 at ¶ 25), that "[she] did not apply for the position of paid assistant basketball

17

coach."

The court is constrained to find that plaintiff has not plausibly stated a prima facie case regarding her Title VII sex discrimination claim against ELSD because she did not actually apply for the assistant coach position. Thus, she has failed to allege a causal nexus between her gender and an adverse employment action based on discriminatory intent by ELSD. In order to state a cognizable gender discrimination claim under Title VII , plaintiff must show that she suffered an adverse employment action. The Third Circuit has defined "an adverse employment action" with respect to a Title VII claim as "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Storey v. Burns Intern. Security Services, 390 F.3d 760, 764 (3d Cir. 2004). Thus, "[a]n adverse employment action may be a discharge or a failure to hire, or any action that alters an employee's compensation, terms, conditions, or privileges of employment." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997). There is simply no failure to hire in this case since plaintiff chose not to apply for the assistant coach position and chose not to go through with the hiring process. *See* Hughes v. Xerox Corp., 37 F.Supp.3d 629, 642-43 (W.D.N.Y. 2014) ("[W]hile a plaintiff who has applied for a position and been rejected has typically suffered an adverse employment

action, '[m]erely expressing an interest in a position is insufficient to support a failure to promote claim [under Title VII]." (citations omitted).

In Taylor v. City of New York, 207 F.Supp. 3d 293, 303 (S.D.N.Y. 2016), the court held that "to make a prima facie showing of failure to promote or hire under Title VII [ ], a plaintiff must establish that: '(1) she is a member of a protected class; (2) she *applied* and was qualified for a job for which the employer was seeking applicants; (3) she was *rejected* for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications.'" (emphasis added) (citing Aulicino v. New York City Dep't of Homeless Servs., 580 F.3d 73, 80 (2d Cir. 2009)). Unfortunately, plaintiff Rogers cannot establish that she was *rejected* for the assistant coach position since she did not *apply* for it.

Moreover, in Carroll v. Lackawanna County, 2015 WL 5512703, *5 (M.D.Pa. Sept. 16, 2015), the court stated that "[g]ender discrimination claims brought under Title VII, the PHRA, and the Equal Protection Clause are governed by the *McDonnell Douglas* burden-shifting framework." (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973); Stewart v. Rutgers, 120 F.3d 426, 432 (3d Cir.1997) (applying the *McDonnell Douglas* framework to analyze discrimination claims under the Equal Protection Clause)). The court in *Carroll*, *id*., stated that "[u]nder the

*McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of employment gender discrimination [by showing that]: (1) she is within a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) the position remained open and was ultimately filled by someone outside the protected class, or a similarly situated individual outside the plaintiff's protected class was treated more favorably." (citations omitted). Also, "[t]he determination of whether a prima facie case has been made [regarding gender discrimination claims brought under Title VII and the Equal Protection Clause] is a legal one for the court to decide." *Id*. (citing Pivirotto v. Innovative Sys., 191 F.3d 344, 347 n. 1 (3d Cir. 1999)).

Thus, similar to a failure to promote or hire claim in which "a plaintiff must allege that she *applied* for a specific position or positions and was *rejected* therefrom", Hughes 37 F.Supp.3d at 643 (emphasis added), the court finds, insofar as plaintiff Rogers asserts a failure to hire claim under Title VII, that she must allege she applied for the coach position in order to rise to the level of a plausible adverse employment action. Otherwise, any prospective job applicant who simply thought about applying for a position but did not actually apply for it based on a belief that they would be discriminated against if they did apply, would be able to assert a claim under Title VII. In short, since plaintiff Rogers did not apply for the coaching position, she cannot establish

20

that ELSD refused to hire her based on discrimination due to her gender.

As such, plaintiff failed to sufficiently link any adverse employment action to her alleged gender discrimination. Therefore, she has failed to allege facts to show that ELSD discriminated against her because she is a member of a protected class.

Plaintiff also alleges Steele and Pawlik, as individual employees of ELSD, unlawfully discriminated against her based on her gender. However, in Kachmar v. SunGard Data Systems, Inc., 109 F.3d 173, 183-184 (3d Cir. 1997), the Third Circuit held that Congress did not intend to hold individual employees liable under Title VII. *See also* Solomon v. Caritas, 2016 WL 4493193, *4 (E.D.Pa. Aug. 26, 2016) ("It is well settled that individual employees cannot be held liable under either Title VII or the ADEA.") (citing Lee v. Univ. of Penn., 321 F.3d 403, 408 n.3 (3d Cir. 2003); Sheridan, 100 F.3d at 1078 ("Congress did not intend to hold individual employees liable under Title VII."); Ugorji v. New Jersey Envtl. Infrastructure Tr., 529 Fed.Appx. 145, 150 n.2 (3d Cir. 2013)).

Therefore, plaintiff's gender discrimination claim under Title VII, Count I, against ELSD will be **DISMISSED WITH PREJUDICE**. Plaintiff's gender discrimination claim under Title VII, Count I, against Steele and Pawlik will also be **DISMISSED WITH PREJUDICE**.

### 4. Equal Protection Claim Under 14th Amendment

Defendants move to dismiss plaintiff's 14th Amendment equal protection claim under §1983, Count II. Specifically, plaintiff alleges that similarly situated persons were treated differently by all three defendants. Plaintiff alleges that defendants discriminated against her "by discouraging her application for the position of paid assistant coach by citing [ELSD's] nepotism policy" and "[b]y comparison, [ELSD] chose not to apply its nepotism policy to discourage the application of similarly situated male applicants." (Doc. 1 at 11). Thus, plaintiff claims that all three defendants violated her 14th Amendment rights.

Plaintiff's equal protection claim is brought against the three defendants under §1983. As mentioned, the school district and school officials are state actors for purpose of §1983. *See* Kline, 454 F.Supp.2d at 262. Equal protection claims typically concern governmental classifications that "affect some groups differently than others." Engquist v. Oregon Dept. Of Ag., 553 U.S. 591, 601 (2008) (citing McGowan v. Maryland, 366 U.S. 420, 425 (1961)).

It is well-settled that a litigant, in order to establish a viable equal protection claim, must show an intentional or purposeful discrimination. Snowden v. Hughes, 321 U.S. 1, 8 (1944); Wilson v. Schillinger, 761 F.2d

921, 929 (3d Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986); E & T Realty v. Strickland, 830 F.2d 1107, 1113-14 (11th Cir. 1987), *cert. denied*, 485 U.S. 961 (1988); *see also* Bierley v. Grolumond, 174 Fed.Appx. 673, 676 (3d Cir. 2006) ("To bring a successful equal protection claim under §1983, a plaintiff must prove the existence of purposeful discrimination, and demonstrate that he was treated differently from individuals similarly situated."). This "state of mind" requirement applies equally to claims involving (1) discrimination on the basis of race, religion, gender, alienage or national origin, (2) the violation of fundamental rights and (3) classifications based on social or economic factors. *See, e.g.*, Britton v. City of Erie, 933 F. Supp. 1261, 1266 (W.D. Pa. 1995), *aff'd*, 100 F.3d 946 (3d Cir. 1996); Adams v. McAllister, 798 F. Supp. 242, 245 (M.D. Pa.), *aff'd*, 972 F.2d 1330 (3d Cir. 1992).

Additionally, plaintiff's equal protection claim under §1983 against defendant ELSD is based on [Monell v. Department of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018 (1978)](). A municipality, including a school district, is a "person" for purposes of §1983. *See* Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1382 (1997) (citing *Monell, supra*)); Damiano v. Scranton School District, 135 F.Supp.3d 255, 266-67 (M.D.Pa. 2015); McGreevy v. Stroup, 413 F.3d 359, 367-69 (3d Cir. 2005) (school district is subject to liability in a §1983 action under *Monell*).

However, a municipality cannot be held liable under §1983 based on *respondeat superior*. *Id*. A municipality is not liable under §1983 only for employing someone who violates a person's civil rights. On the contrary, a municipality that does not directly violate a person's civil rights is liable only where it has established a policy or custom that led to the constitutional violation. *Id*. The plaintiff bears the burden of identifying the policy or custom. *Id*. This rule ensures that a municipality will only be liable where it is the "moving force" behind the plaintiff's injury. *Id*. Plaintiff bases her equal protection claim under §1983 against defendant ELSD on its nepotism policy which she alleges was unequally enforced against her due to her gender but not enforced against similarly situated males.

Plaintiff is raising her equal protection claim under the traditional theory which protects a plaintiff from intentional discriminatory treatment based on membership in a protected class, such as gender or race. *See* Oliveira v. Twp. of Irvington, 41 Fed.Appx. 555, 559 (3d Cir. 2005). Further, "[c]ourts within the Third Circuit apply the same analysis to gender discrimination claims under Title VII as gender discrimination claims under the PHRA and equal protection claims brought under section 1983." *Carroll,* 2015 WL 5512703 *4 (citations omitted). Thus, plaintiff must establish prima facie case of employment discrimination under the *McDonnell Douglas* framework

specified above. *Id*. at *5.

The court finds that plaintiff has not established a prima face case of gender discrimination under the Equal Protection Clause since, as discussed above, she fails to state that she suffered an adverse employment action as required. *See id.*. As mentioned, plaintiff did not actually apply for the assistant coach position, and unfortunately the court, is compelled to find that this is fatal to her equal protection claim since she simply cannot establish all of the necessary elements of an employment discrimination claim under Title VII and the Equal Protection Clause based on her gender. As such, plaintiff's equal protection claim cannot proceed against any of the defendants.

Thus, plaintiff's equal protection claim, Count II, against ELSD, and Steele and Pawlik, in their personal capacity, will be **DISMISSED WITH PREJUDICE**.

### 5. Qualified and PSTCA Immunity

Defendants argue that plaintiff's complaint fails to state a claim of violation of clearly established constitutional or statutory law. Thus, they contend that Pawlik and Steele are entitled to qualified immunity as to Count III in which plaintiff seeks to hold them personally liable.

Since the court has found that plaintiff has failed to state a cognizable

equal protection claim under §1983 against Pawlik and Steele, it need not address whether these two individual defendants are entitled to qualified immunity. Thus, defendants' motion to dismiss, based on qualified immunity, is deemed **MOOT**.

Similarly, defendants argue that Pawlik and Steele are entitled to immunity from plaintiff's claims pursuant to the Political Subdivision Tort Claims Act, ("PSTCA"), 42 Pa.C.S.A. §§ 8541, *et seq*. (Doc. 15 at 8). In light of the foregoing, the motion to dismiss based upon the PSTCA is also deemed **MOOT**[2].

## IV.    CONCLUSION

Despite the court's concerns about the serious allegations here, the plaintiff's failure to actually take steps to apply for the position leaves the court

---

[2]The court notes, however, that the PSTCA appears inapplicable in this case since it applies to state law tort claims and plaintiff did not raise any such claims in her complaint. *See* K.A. ex rel. J.A. v. Abington Heights School Dist., (M.D.Pa. 2014) 28 F.Supp.3d 356, 375-77 (court found that school officials were immune from liability with respect to plaintiff's state law tort claim of IIED); Goss-Kozic v. Ross Twp., 2016 WL 4502445 (M.D.Pa. Aug. 29, 2016) (this court found that the PSTCA statute bars state law claims for wrongful death and survivorship against Township and its officials); Kobrick v. Stevens, 2014 WL 4914186 (M.D.Pa. Sept. 30, 2014) (this court held that the general grant of immunity under the PSTCA shields the School District and its officials acting within the scope of their employment from liability for the plaintiff's state law tort claims).

with little alternative but to **GRANT IN ITS ENTIRETY** the defendants' motion to dismiss, (Doc. 9), plaintiff's complaint, (Doc. 1), as detailed above. An appropriate order shall follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: November 6, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2017 MEMORANDA\17-0696-01.wpd